Westlaw.

Not Reported in P.2d

Page 1

Not Reported in P.2d, 1998 WL 894945 (Alaska App.)

**(Cite as: 1998 WL 894945 (Alaska App.))**

C

Only the Westlaw citation is currently available.

NOTICE: UNPUBLISHED OPINION

Court of Appeals of Alaska.
STATE of Alaska, Appellant,
v.
Jesse Willis **LANMAN**, Appellee.
Nos. A-6655, 3945.

Dec. 23, 1998.

Appeal from the District Court, Third Judicial District, Palmer, Peter G. Ashman, Judge.

Robert C. Nauheim, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

Before COATS, C.J., and MANNHEIMER and STEWART, JJ.

*MEMORANDUM OPINION AND JUDGMENT*

COATS.

*1 The state charged Jesse Willis Lanman for driving without a state driver's license (DWOL). District Court Judge Peter G. Ashman dismissed the case because Lanman had been issued a driver's license by the Village of Chickaloon. The state appeals, and we reverse.

On the evening of November 22, 1996, Lanman was stopped while driving on the Glenn Highway with an inoperable headlight. Lanman presented a driver's license purportedly issued by the Chickaloon Native Village tribe; his Alaska driver's license had expired in 1991. As a result, the state charged Lanman with DWOL, a misdemeanor. [FN1] Judge Ashman ruled that the Chickaloon village could issue driver's licenses that were valid in Alaska. The state petitioned this court to review Judge Ashman's ruling; we treated the ruling as a final disposition and the petition as a notice of appeal.

FN1. AS 28.15.011(b); AS 28.40.050(a).

We addressed a similar contention in *Harrison v. State*. [FN2] In that case, Harrison argued that he was exempt from Alaska's vehicle registration and driver's license requirements because he possessed an automobile registration and a driver's license issued by Chickaloon village. [FN3] After some discussion, and after noting that "[w]e view the issues of Native sovereignty and self-government in Alaska to be particularly complex," [FN4] this court stated that it was bound by the Alaska Supreme Court case, *Native Village of Stevens*. [FN5] We added, "most Native groups in Alaska are not self-governing or sovereign" [FN6] and, "[i]n the absence of some evidence that Chickaloon village has been recognized as a self-governing tribe by the federal government, we are compelled to hold that it lacks the authority to register vehicles or license drivers." [FN7] This court therefore rejected Harrison's arguments and affirmed his convictions. [FN8]

FN2. 791 P.2d 359 (Alaska App.1990).

FN3. *See id.* at 361.

FN4. *Id.* at 363.

FN5. *Native Village of Stevens v. Alaska Management & Planning*, 757 P.2d 32 (Alaska 1988); *see also Harrison*, 791 P.2d 359.

FN6. *Harrison*, 791 P.2d at 362 (citing *Native Village of Stevens*, 757 P.2d at 34).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit B
Page 1 of 3**

Not Reported in P.2d                                                                 Page 2
Not Reported in P.2d, 1998 WL 894945 (Alaska App.)
(Cite as: 1998 WL 894945 (Alaska App.))

> FN7. *Id.* at 363.
>
> FN8. *See id.* at 364.

In deciding Lanman's case, Judge Ashman took notice of that last-quoted sentence from *Harrison* and then acknowledged that since that decision, the federal government, in 1993, had indeed explicitly recognized "Chickaloon Native Village" in a list of over two hundred "Indian Entities Recognized and Eligible to Receive Services From the United States Bureau of Indian Affairs." [FN9] This published notice explained:

> FN9. Indian Entities Recognized and Eligible to Receive Services From the United States Bureau of Indian Affairs, 58 Fed.Reg. 54,364, 54,369 (1993). "Chickaloon Native Village" remains in the list. Indian Entities Recognized and Eligible to Receive Services From the United States Bureau of Indian Affairs, 62 Fed.Reg. 55,270, 55,274 (1997).

> The Bureau of Indian Affairs has ... found that the villages and regional tribes listed below have functioned as political entities exercising governmental authority and are, therefore, acknowledged to have "the immunities and privileges available to other federally acknowledged Indian tribes by virtue of their status as Indian tribes as well as the responsibilities and obligations of such tribes."
>
> The purpose of the current publication is to publish an Alaska list of entities conforming to the intent of 25 CFR 83.6(b) and to eliminate any doubt as to the Department's intention by expressly and unequivocally acknowledging that the Department has determined that the villages and regional tribes listed below are distinctly Native communities and have the same status as tribes in the contiguous 48 states. Such acknowledgement of tribal existence by the Department is a prerequisite to the protection, services, and benefits from the Federal Government available to Indian tribes. This list is published to clarify that the villages and regional tribes listed below are not simply eligible for services, or recognized as tribes for certain narrow purposes. Rather, they have the same governmental status as other federally acknowledged Indian tribes by virtue of their status as Indian tribes with a government-to-government relationship with the United States; are entitled to the same protection, immunities, privileges as other acknowledged tribes; have the right, subject to general principles of Federal Indian law, to exercise the same inherent and delegated authorities available to other tribes; and are subject to the same limitations imposed by law on other tribes.[[FN10]]

> FN10. 58 Fed.Reg. at 54,365-66.

*2 Judge Ashman ruled that this published notice, recognizing Alaska tribes in general and Chickaloon village in particular as "hav[ing] the same governmental status as other federally acknowledged Indian tribes by virtue of their status as Indian tribes with a government-to-government relationship with the United States," rendered inapplicable both this court's *Harrison* decision and the supreme court's *Stevens* decision. [FN11] Relying on the federal notice and on federal cases, Judge Ashman ruled that Chickaloon village was authorized to issue driver's licenses, and the State of Alaska was obliged to honor these driver's licenses.

> FN11. Judge Ashman quoted this sentence from *Stevens:* "[J]udicial recognition of tribal sovereign immunity turned on whether Congress, or the executive branch of the federal government, had recognized the particular group in question as a tribe." 757 P.2d at 34-35 (citation omitted).

We conclude that, notwithstanding the 1993 notice and list of "Entities Recognized and Eligible to Receive Services From the United States Bureau of Indian Affairs," this court remains bound by the supreme court's *Stevens* decision and that our *Harrison* decision is still controlling. In *Stevens,* the Alaska Supreme Court held, after a lengthy discussion of Native Alaskan and Congressional history, that the federal government--by which the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit B
Page 2 of 3

Not Reported in P.2d   Page 3

Not Reported in P.2d, 1998 WL 894945 (Alaska App.)

**(Cite as: 1998 WL 894945 (Alaska App.))**

court specifically meant Congress, rather than the Bureau of Indian Affairs--had remained consistent in its intent that it not grant or accord Alaska Native communities status as self-governing sovereigns. [FN12] The supreme court has more recently reiterated this conclusion: "[T]he history of the relationship between the federal government and Alaska Natives ... indicates that Congress intended that most Alaska Native groups not be treated as sovereigns." [FN13]

>   FN12. *See* 757 P.2d at 34-41.

>   FN13. *In re F.P.*, 843 P.2d 1214, 1215 (Alaska 1992) (quoting *Stevens*, 757 P.2d at 34).

In any event, since Alaska's *Stevens* and *Harrison* cases, the United States Supreme Court has specifically held that whether even a sovereign Indian tribal government immunizes tribal members from a state's motor vehicle registration fees turns on whether the tribal members reside in "Indian country" as defined in 18 U.S.C. § 1151. [FN14] This court noted in *Harrison* that Chickaloon village did not appear to be "Indian country," unless it was categorized as a "dependent Indian communit[y]" under 18 U.S.C. § 1151(b). [FN15] Recently, the United States Supreme Court held that land conveyed under the Alaska Native Claims Settlement Act (ANCSA) generally does not constitute "dependent Indian communities" or, therefore, "Indian country." [FN16]

>   FN14. *See Oklahoma Tax Comm'n v. Sac and Fox Nation*, 508 U.S. 114, 113 S.Ct. 1985, 1990-91, 124 L.Ed.2d 30 (1993).

>   FN15. *See* 791 P.2d at 361 n. 2.

>   FN16. *See Alaska v. Native Village of Venetie Tribal Gov't*, 522 U.S. 520, 118 S.Ct. 948, 952-56, 140 L.Ed.2d 30 (1998).

We REVERSE Judge Ashman's ruling and REMAND for further proceedings against Lanman. We do not retain jurisdiction of this appeal.

Not Reported in P.2d, 1998 WL 894945 (Alaska App.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit B
Page 3 of 3**