Ralph Kermit Winterrowd 2nd
c/o P.O. Box 877109
Wasilla, Alaska [99687]
357-8003 H, 357-8007 Fax
ralph@jusbelli.com

RECEIVED

MAY 0 3 2006

CLERK U.S. DISTRICT COURT
ANCHORAGE, ALASKA

# The United States of America

# The United States

# District Court of the United States

# District of Alaska

**Ralph Kermit Winterrowd 2nd**
*Plaintiff*

v.

**Chickaloon Village, and;**

**STATE OF ALASKA**
*Defendants*

Case 3:06-CV-00034 TMB

Opposition to Motion to Dismiss

*Come now*, Ralph Kermit Winterrowd 2nd ("Winterrowd") without Assistance of Counsel with this **Opposition to Motion to Dismiss.**

Jurisdiction arises as Winterrowd ***has exhausted all of his remedies in the jurisdiction of the Chickaloon Village and said municipal laws and administrative remedies of Chickaloon Village and is protected by 25 U.S.C. § 1301 et. seq. as a non-Indian*** as evidenced by the **Attachment 1** of Docket 1 issued an Emergency Order from the Tribal Court

(Case No. 2005-08-01) filed into the Superior Court of Alaska as a foreign judgment (3PA-05-01542CI), Recorded said Emergency Order in the Palmer Recording District (2005-022833-0) with a certified copy attached, being **Attachment 1** in Docket 1 of this instant Case, and this was filed back into 3PA-05-01542CI (foreign judgment).

As further evidence that Winterrowd has exhausted all of his administrative remedies, and Winterrowd is the custodian of an original document from the Chickaloon Village Letter ("Chickaloon Letter") dated April 17, 2006 being **Attachment 2**, and it clearly states that Winterrowd does have the right to appear before the Chickaloon Village Traditional Council concerning the suspension of Chickaloon Village Driver's License 003045 and the Appeal of said decision if negative to Winterrowd available, is the Chickaloon Village Traditional Court ("Tribal Court"). Note that the Emergency Order from Case No. 2005-08-01 is from Tribal Court. Therefore this is conclusive that I have an adjudged decision from the highest administrative remedy available within the Chickaloon Village. Winterrowd finds this Chickaloon suspension a benighted, vindictive, and capricious action, as the conviction to which Chickaloon references in total has been suspended until the result of the Court of Appeals Case A-9588, and Winterrowd has a current "Alaska Driver License." Hmmmm?

### Parties

**Ralph Kermit Winterrowd 2nd** is an American citizen, white citizen, citizen of the United States of America, and a Natural Born Native and citizen of the foreign state of Kansas domiciled in the territorial boundaries of Alaska. Winterrowd does not claim as his ***primary citizen status to be a citizen of the United States!*** Winterrowd would only use the national citizen status of a "citizen of the United States" *after* the ***primary citizen of one of the several States*** for the privileges and immunities of the status of being a "citizen of the United States."

Ralph Kermit Winterrowd 2nd is not an individual or a "citizen of the United States" as used by Congress in 5 U.S.C. § 552 or under the Social Security Act (49 Stat 620 as amended) wherein Winterrowd would have relinquished his constitutionally secured Rights for possible gratuities or benefits, or under the same status as declared by Congress to Indians in 25 U.S.C. §§ 1401, 1404 as "citizens of the United States" that are *outside of the secured Rights of the people of the United States secured in the Constitution of the United States and constitutions of the several States.* . See 42 U.S.C. § 405(g-h); *United States v. Babcock*, 250 U.S. 328, 331 (1919); *Dismuke v. United States*, 297 U.S. 167, 171-172 (1936); *Fleming v. Nestor*, 363 U.S. 603, 609-612 (1960); *Hayburn's Case*, 2 Dall. 409, 409-411 (1792); *United States v. Ferreira*, 13 How. 40, 48-50 (1851); *Muskrat v. United States*, 219 U.S. 346, 352-362 (1911).

Winterrowd is an "American citizen" having the right of Election and this was firmly established that said status attached for those who were *post natus* of the Declaration of Independence of July 4, 1776. See *Inglis v. The Trustees of the Sailor's Snug Harbour of the city of New York*, 28 U.S. 99, 9, 16-18, 25, 40, **42-43** (1830). It is not, nor can it be disputed that the Winterrowd is Natural born citizen and American citizen.

Winterrowd is "citizen of the United States of America" and this status attaches to any man or woman that is Native Born or is Naturalized. Naturalization is the *only Power* granted to Congress concerning any type of citizenship arising under the "Constitution of the United States" and this is evidenced today and codified in 8 U.S.C. § 1449 by "was entitled to be admitted a *citizen of the United States of America*, thereupon ordered that the applicant to be admitted as a citizen of the United States of America." *[Emphasis added]* The status of being an American citizen and a "citizen of the United States of America" is also evidenced by 1 Stat 477, being **Attachment 3**.

All of the members of the jury and voters in Alaska are "citizens of the United States" and "residents of Alaska" and not "citizens of Alaska" and this is evidenced by ©AS 09.20.010 and ©AS 15.05.010 respectively. This is exactly the same citizenship and residency status as under the Territory of Alaska found in *Anderson v. Scholes*, 83 F.Supp 681, 687 (DC Territory of Alaska 1949). Indian and Alaska Natives are also "citizens of the United States" and residents therein with SSNs. See 8 U.S.C. § 1401 & 1404 with a constitution, i.e. Bill of Rights, enacted by Congress in 25 U.S.C. § 1302. Pray tell how can the Winterrowd be a "citizen of the United States" as his ***primary citizen status*** and a citizen of one of the several States with inalienable rights secured in the Constitution of the United States and a Constitution of any of the several States be on an equal footing with an Indian or Alaska Native that is a "citizen of the United States" as his ***primary citizen status*** and resident of Alaska that is under the plenary power of Congress? See *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 57 (1978). The answer of course is that a "citizen of the United States" with the Social Security Number attached has no constitutionally secured rights.

In the adjudged decision of the *United States v. Cruikshank*, 92 U.S. 542, 554 (1875) the fourteenth amendment secures "the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice." As Winterrowd each owes allegiance to two sovereignties, one being the citizen of any of the several States as ***primary citizen status***, and only a "citizen of the United States" for issues of national concern, and Winterrowd can claim the protections of both citizenships within its respective jurisdiction, *id* at 550, 551. And further, the United States has no voters of it's own, *id* at 555.

The unalienable rights of Winterrowd and the Sovereignty and duty for the protection of same, rests alone with any of the several States for it's citizens, and this still remains unaltered by the addition of the Fourteenth Amendment for "citizens of the United States" (national citizenship) as held in the adjudged decision of *Cruikshank, id* at 553, 554 and 555, to wit:

> The rights of life and personal liberty are natural rights of man. 'To secure these rights,' says the Declaration of Independence, 'governments are instituted among men, deriving their just powers from the consent of the governed.' **The very highest duty of the States, when they entered into the Union under the Constitution, was to protect all persons within their boundaries in the enjoyment of these 'unalienable rights with which they were endowed by their Creator.' Sovereignty, for this purpose, rests alone with the States. It is no more the duty or within the power of the United States to punish for a conspiracy *554 to falsely imprison or murder within a State, than it would be to punish for false imprisonment or murder itself.**
>
> \* \* \*
>
> The fourteenth amendment prohibits a State from denying to any person within its jurisdiction the equal protection of the laws; **but this provision does not, any more than the one which precedes it, and which we have just considered, add any thing *555 to the rights which one citizen has under the Constitution against another. The equality of the rights of citizens is a principle of republicanism.** Every republican government is in duty bound to protect all its citizens in the enjoyment of this principle, if within its power. **That duty was originally assumed by the States; and it still remains there. The only obligation resting upon the United States is to see that the States do not deny the right. This the amendment guarantees, but no more. The power of the national government is limited to the enforcement of this guaranty.** *[Emphasis added]*

The citizens of the United States of America that ordained and established the government of the United States defined its powers by a Constitution. The government created consisted of a political system that was twofold, a government of each of the several States with limited delegation of Power and then a grant of this limited delegation of Power to a government of the United States. The independent governments of the several States brought forth privileges and immunities from the Articles of Confederation for the complete protections

Opposition to Motion to Dismiss     Page 5 of 11

of their citizens, *United States v. Cruikshank*, 92 U.S. 542, 549-550 (1875). It is "the very highest duty of the States" to protect all persons within their boundaries in their enjoyment of the unalienable rights as "*Sovereignty*, for this purpose, *rests alone with the States*." Ibid, 553. "The right to vote in the States comes from the States," *Id.* 555, and this is the primary reason that the citizen of one of the several States, and not the United States, shall always exist under the guaranteed "Republican Form of Government" as found in the Constitution's Article IV, section 4.

A citizen's allegiance "is a political obligation" that depends on the enjoyment of the protection of government and not on ownership of land within one of the several states of the union of the United States. See *Wallace v. Harmstad*, 44 Pa. 492. Allegiance "binds the citizen to the observance of all laws" of his own sovereign, see *Adams v. People*, 1 N.Y. 173, and may be an absolute and permanent obligation or a qualified and temporary one. The doctrine of allegiance "rests on the ground of a mutual compact between the government and the citizen[], which it is said cannot be dissolved by either party without the concurrence of the other. It is the tie which binds the governed to the government, in return for the protection which the government affords them," see *Inglis v.* , 28 U.S. 99, 118 (1830). "The doctrines of allegiance must be looked for in the law of the state that has jurisdiction of the soil," see *Inglis* at 125. "Allegiance may be dissolved only by *mutual consent* of the government and its citizens" at *id* 118. Winterrowd has NOT attempted to release by any act the renouncement of his citizenship the elective choice of a citizen of one of the several States for the exclusive status and primary citizen status to being a "citizen of the United States" as a ***primary citizen status***. It does not follow that a government can compulsively oblige the Winterrowd to renounce his allegiance to his birthright to claim only the citizenship of a national government when he was born as a

citizen to two sovereign governments, one of the several States and of the Nation. A citizen must, by some act, distinctly and knowingly renounce his allegiance in order to divest himself of citizenship. See *Carlisle v. U.S.*, 83 U.S. 154, 154 (1872). Winterrowd does not, will not and has not divested his allegiance to citizenship of one of the several States. Even if it could be declared that no citizen of one of the several States exists today, the sovereign state government has not noticed the Winterrowd that it has dissolved or abolished such citizenship. There has been no mutual consent for the act to occur and therefore it must stand that the sovereign state citizenship does exist.

All citizens are members of the political community to which they belong. Each citizen born in America is subject to two governments: one State and the other National. Each has separate jurisdictions, separate sovereignties and together they make one whole. The natural consequence of this republican form of government is *a citizenship that owes allegiance to two sovereignties* with claims for protections from both. The privileges and immunities protected by the constitution were not rights granted to the people by the United States. They were *obligations on the part of the States to fulfill* for the protection of its citizens. The privileges and immunities protected are the enjoyment of pursuing a trade and of acquiring, holding and selling property, *Powell v. Pennsylvania*, 127 U.S. 678 (1888); the right of a class not to be singled out as a special subject of hostile or discriminating legislation, *Pembina Consol. v. Pennsylvania*, 125 U.S. 181, 188, 189 (1888) and to be protected from class legislation, *Barbier v. Connolly*, 113 U.S. 27, 32 (1884). Some rights have been declared to be a privilege and immunity secured by the Constitution such as the right to free transit through or from a state under Article IV, section 2, see *Smith v. Turner*, 48 U.S. 283 (1849); and "the States cannot be held to have *parted with any of the attributes of sovereignty* which are not

plainly vested in the federal government and inhibited to the States, either expressly or by necessary implication. This implication may arise from the nature of the power." *Id.* 393. (emphasis added) Winterrowd is entitled for the constitutional State to protect their duty, as one of the several States of the Union, of guaranteeing Winterrowd to exercise all his inalienable rights of which one includes due process of law in a constitutional court for *ALL* Cases in Law and Equity.

Of course the "STATE OF ALASKA" did not come into the Union of the States as one of the several States, one of the United States of America, and one an equal footing with the *original* States. But instead, the STATE OF ALASKA is a "State of the United States of America", entered on an equal footing with the "other States", came in by Presidential Proclamation, instead by Congress, and this is all in the public record on the enacting clause of the Alaska Statehood Act. Also missing on the Territory of Alaska and the STATE OF ALASKA is the boundaries of one of the several States so that it can be located in the world. This is just the beginning of the public record on the STATE OF ALASKA.

**Chickaloon Village** is a federally recognized tribe within the territorial boundaries of Alaska by the executive Power and legislative Power of the United States as evidenced by numerous public records and arising under Article I Section 8 Clause 3 being "To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes;"

**STATE OF ALASKA** is a State (sic) that has refused to honor (reciprocity and comity) the Chickaloon Driver License, refused to honor (reciprocity and comity) the Chickaloon Village Court Order, refused reciprocity of the "Chickaloon Driver License" issued by the Chickaloon Village, and refused to honor a foreign judgment that stands still unopposed of the Chickaloon Village filed in Palmer, Alaska in Case 3PA-05-01542CI and filed into the

public records of the Palmer Recording District with the number of 2005-022833-0. Instead the STATE OF ALASKA pursues the individual prosecution of certain people with criminal charges to withhold the rights of the Native Americans to become self-sufficient and exercise their sovereign Powers as a Nation.

### Winterrowd Has Exhausted all of Administrative Remedies in the Nation of the Chickaloon Village

Chickaloon Village is a federally recognized tribe by the legislative and executive Power of the United States and has issued Winterrowd a Chickaloon Driver License (Number CV-00305), issued an Emergency Order from the Tribal Court (Case No. 2005-08-01) filed into the Superior Court of Alaska as a foreign judgment (3PA-05-01542CI), Recorded said Emergency Order in the Palmer Recording District (2005-022833-0) with a certified copy attached in Docket 1, being **Attachment 2**, and this was filed back into 3PA-05-01542CI (foreign judgment).

Winterrowd has the protection available to him in Title 25 Chapter 15 (25 U.S.C. § 1301 *et seq.* and in particular 25 U.S.C. § 1302) as a non Indian, the same as Indians for the deprivation of the right to travel, the right to Due Process of Law, the right of equal protection of the its laws, deprive any person of liberty or property without dues process of law, the right not be arrested without Assistance of Counsel and the right to have the protections of the said Title 25 Chapter 15 for said Driver License within the several States without being arrested, jailed and money taken. See *Hickey v. Crow Creek*, 379 F.Supp. 1002 (D.C.S.D. 1974); *Dodge v. Nakai*, 298 F.Supp 17, 24 (D Ariz. 1968); .

Winterrowd has shown by the evidence presented that meaningful tribal remedies existed, that Winterrowd exhausted the tribal remedies that will serve the purposes of comity

and strengthening tribal institutions, and that Winterrowd has exhausted **all** of the tribal remedies of the Chickaloon Village Tribal Court System, Winterrowd has filed the Chickaloon Tribal Court's judgment into the courts of Alaska as a foreign judgment and as a public record as evidenced by Docket 1 **Attachment 1** for reciprocity and comity and therefore it devolves upon this Court of the United States to take jurisdiction as the State of Alaska has not opposed the foreign judgment, but the State of Alaska as proceeded *sub silentio* when there is a duty to affirm or deny.  See *Howlett v. Salish and Kootenai Tribes of Flathead Reservation, Montana*, 529 F.2d 233, 230, 240 (9th Cir.1976); *National Farmers union Ins. Companies v Crow Tribe of Indians*, 736 F.2d 1320, 1326, (9th Cir. 1984); *St. marks v. Chippewa-Cree Tribe of Rocky Boy Reservation*, 545 F.2d 1188, 1189+, (9th Cir. 1976); Accord, *McCurdy v. Steele*, 506 F.2d 653, 656-657 (10th Cir. 1974); *O'Neal v. Cheyenne River Sioux Tribe*, 482 F.2d 1140 (8th Cir. 1973); *Brunett v Dann*, 417 F.Supp 1382, 1384 (D.Idaho 1976); *Takes Gun v. Crow Tribe of Indians*, 448 F.Supp 1222, 1224 (D. Mont 1978); *Clairmont v. Confederated Salish and Kootenai Tribes*, 409 F.Supp 1161, 1161 (D. Mont. 1976) .

   A Complaint for injunctive relief they shall stand as true unless it appears beyond doubt that the Winterrowd can prove no set of facts in support of his claim to which Winterrowd has entered evidence as public documents and they stand to date unrebutted.  See *Conley v. Gibson*, 355 U.S. 41, 45-46(1957); *Hishon v. King*, 467 U.S. 69, 73(1984); *Cruz v. Beto*, 405 U.S. 319, 322 (1972);  *Hartford v. California*, 509 U.S. 764, 811(1993); *McLain v. R.E.B.*, 444 U.S. 232, 246(1980).  *Conley v. Gibson*, 355 U.S. 41, 45-46(1957); *Hishon v. King*, 467 U.S. 69, 73(1984); *Cruz v. Beto*, 405 U.S. 319, 322 (1972);  *Hartford v. California*, 509 U.S. 764, 811(1993); *McLain v. R.E.B.*, 444 U.S. 232, 246(1980).

Chickaloon has a vested interest in this instant Case as Winterrowd has no standing to defend Chickaloon's interests, municipal laws and the outcome goes to the intent of Congress that federally recognized tribes become self-governing and exercise sovereign Powers of the tribe not directly prohibited by Congress.

My Hand,

*/s/ Ralph Kent Winterrowd 2d*

### Certification

I certify that this Opposition to Motion to Dismiss were mailed first class vial the USPS or served at their Office to the following parties.

David Avraham Voluck, Esq.
Law Offices of Jude Pate & David Voluck
P.O. Box 2834
Sitka, AK 99835
907-747-2814
davidvoluck@msn.com

State of Alaska
Attorney General's Office
1031 W. 4th Avenue, Suite 200
Anchorage, Alaska 99501-1994
907-269-5100

Date  May 3, 06
Signature  */s/ Ralph Kent Winterrowd 2d*