1          IN THE DISTRICT COURT FOR THE STATE OF ALASKA

2            THIRD JUDICIAL DISTRICT AT PALMER

3   STATE OF ALASKA,                    )
                                        )
4                  Plaintiff,           )
                                        )
5        vs.                            )
                                        )
6   RALPH WINTERROWD,                   )
                                        )
7                  Defendant.           )   Case No. 3PA-05-2098 CR
    _____        )

8

9             TRANSCRIPT OF JURY TRIAL PROCEEDINGS

10                    VOLUME 1 OF 3

11      Proceedings of 1/31/06        Pages 1 through 164

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**brief encounters**

(907) 230-6691

Attachment 1
33 pgo total

1

2

3

4

5

6

7

8                              JURY TRIAL

9              BEFORE THE HONORABLE JOHN W. WOLFE,
                          DISTRICT COURT JUDGE
10

11                              Tuesday, January 31, 2006
                                    8:48:13 A.M. O'clock
12                                      Palmer, Alaska

13

14   APPEARANCES:

15   For Plaintiff:     DISTRICT ATTORNEY'S OFFICE
                        BY:  JAROM BANGERTER
16                      DISTRICT ATTORNEY
                        11921 Palmer-Wasilla Highway, Suite 100
17                      Palmer, Alaska  99645

18

19   For Defendant:     RALPH KERMIT WINTERROWD, 2ND, *Pro Per*

20

21
     Transcribed by:    *brief encounters*
22                      P. O. Box 870084
                        Wasilla, Alaska  99687
23

24

25

                        **brief encounters**

                        **(907) 230-6691**

                                                                2

1        Palmer, Alaska, Tuesday, January 31, 2006, 8:48 a.m.

2                    P R O C E E D I N G S

3    [3PA 06-127]

4    [8:48:13]

5        THE COURT:  All right.  Good morning.  On record with

6    some status hearing, trial status.  Mr. Snyder, can you hear

7    me okay?

8        MR. SNYDER:  Yes.

9        THE COURT:  And we have several matters.  *State versus*

10   *Robert Snyder*, 05-2344.  Also, *State versus Ralph Winterrowd*,

11   05--2098.  And, finally, *State versus Robert Cook*, 05-1975.

12   And in the courtroom for the state is Mr. Bangerter, and Mr.

13   Stoller is here for Mr. Snyder.  And, I guess, let's take up

14   Mr. Winterrowd first because he was number one for trial.  Is

15   this one still a trial?

16       MR. BANGERTER:  It looks it, Your Honor.

17       THE COURT:  Okay.  And Mr. Winterrowd just walked out the

18   door, so I assume he's ready for trial.  Mr. Stoller, I think

19   yesterday we decided this would be trial number two.  Is that

20   the.....

21       MR. BANGERTER:  That's correct.

22       THE COURT:  .....state's position?  Okay.

23       MR. BANGERTER:  Yes, and I'm not the attorney repre --

24   doing this case, I don't know where Mr. Perry is, but this is

25   number two.

**brief encounters**

(907) 230 -6691

3

1    THE COURT:  Okay.  This -- Mr. Stoller, I guess let's

2  reset this for tomorrow morning at 8:30 with the understanding

3  that if something happens, either the trial's over or Mr.

4  Winterrowd's trial goes away, that this would start around

5  9:30.  And Mr. Snyder again can be within an hour of the

6  courthouse.  We'll give him a call at 8:30 if he wants to be

7  telephonic, so is that acceptable?

8    MR. STOLLER:  That's fine, Your Honor.

9    THE COURT:  Okay.  All right, thank you, Mr. Stoller.

10    MR. STOLLER:  And, Mr. Snyder, I'll be giving you a phone

11  call later today, okay?

12    MR. SNYDER:  All right.

13    MR. STOLLER:  Okay, I'll talk to you then.

14    MR. SNYDER:  Thank you.

15    MR. STOLLER:  Yep.

16    THE COURT:  And with regard to *State versus Robert Cook*,

17  05-1975, neither Mr. Cook nor Mr. -- I believe it was Mr......

18    MR. BANGERTER:  McCready.

19    THE COURT:  .....McCready is here.  Maybe we could give

20  Mr. McCready a call and find out.....

21    MR. BANGERTER:  Mr. Cook's out in the hallway waiting for

22  Mr. McCready, I know that.

23    THE COURT:  Oh, is he?

24    MR. BANGERTER:  Yeah.

25    THE COURT:  Okay.  Well, we'll.....

1       MR. BANGERTER:  But.....

2       THE COURT:  .....put that on hold, then.

3       MR. BANGERTER:  .....I haven't spoken to him.

4       THE COURT:  Yeah, are there any pre-trial issues we need

5  to take up at this time with regard to *State versus*

6  *Winterrowd*, Mr. Winterrowd or Mr. Bangerter?

7       MR. WINTERROWD:  I had one of my hearing aides go out,

8  and I would really appreciate it if you would talk up because

9  you talk real softly.

10      THE COURT:  Let me give you one of those hearing devices,

11  Mr. Winterrowd, and if you do have trouble at any time and

12  want to use it, you're free to put those.....

13      MR. WINTERROWD:  Okay.

14      THE COURT:  .....headphones on.

15      MR. WINTERROWD:  Yeah, we've got quite a few things, and

16  I need to make a statement.  I just went down to get my other

17  two process of service issues here.  Thank you.

18      THE CLERK:  Here's the on/off and then volume control.

19      MR. WINTERROWD:  Okay, thank you.  I need to enter these

20  subpoenas here.  Teresa Shaw, for the record, even though you

21  quashed it.

22      THE COURT:  All right.  You can file that with Madam

23  Clerk.

24      MR. WINTERROWD:  Well, I need to get it on rec -- Teresa

25  Shaw on the record.  Beverly Cutler was served, and she hasn't

**brief encounters**

(907) 230-6691

1  said anything, so I presume she's going to be here when I call

2  for here.

3         THE COURT:  I believe she is here.

4         MR. WINTERROWD:  Pardon?

5         THE COURT:  I believe she's in the building.

6         MR. WINTERROWD:  Yeah, well, she hasn't tried -- you

7  haven't quashed it yet, so, for whatever reason.  We need to

8  get on the record John Maloney was the fellow that you quashed

9  the summons on without even knowing his name.

10        THE COURT:  Is that the CSED, or the.....

11        MR. WINTERROWD:  He is a head of the CSED and the whole

12 group down there.

13        THE COURT:  Okay.

14        MR. WINTERROWD:  We ought to get his name on the record,

15 seeing how it's quashed, at least so we know who the guy was.

16        THE COURT:  Okay.

17        MR. WINTERROWD:  Because he was really important to what

18 was going on here.  And then I've got Philip Krauss, where I

19 kept trying to get information.  One was to produce documents,

20 which I still haven't them all the way [sic].  By the way, I

21 went over there and the video still wasn't there.  That's all.

22        THE COURT:  Let's address that issue, then.

23        MR. WINTERROWD:  Pardon?

24        THE COURT:  Let's address the issue of the video.

25        MR. WINTERROWD:  Okay.  Well, this is his there, and

**brief encounters**

(907) 230 -6691

6

1  that's his, that one.  And then I have one more, and then

2  we're done with these.  A fellow by the name of Dwayne

3  Bannock, which is real important, he's the head of DMV.  He

4  hasn't tried to quash it.  What he said is -- well, I can't

5  tell you what he said, but he said you're going to have to

6  bring the police over to pick him up, because he's not showing

7  up.  He doesn't think much of your sort -- of these court

8  summonses.

9       THE COURT:  Okay.

10      MR. WINTERROWD:  So I would -- and my motion to you is,

11  he's at work today, is to have somebody bring him in.  Name of

12  Dwayne Bannock, he's head of DMV.  He's important because

13  we're going to discuss something called a driver license, and

14  he is the head of DMV.

15      THE COURT:  All right.  Now, you actually served him a

16  subpoena?

17      MR. WINTERROWD:  Twice.

18      THE COURT:  And.....

19      MR. WINTERROWD:  He's been served twice now.  I wanted to

20  make sure he knew the date, so we went in, and here's a copy

21  all filled out of the second time he was served.

22      THE COURT:  All right.  And when was he supposed to be

23  here, Mr. Winterrowd?

24      MR. WINTERROWD:  It says on here 8:30, January 31st.  Is

25  that today?



**brief encounters**

(907) 230 -6691

7

1          THE COURT:  Yes.

2          MR. WINTERROWD:  Yeah.

3          THE COURT:  And so what is your request?

4          MR. WINTERROWD:  I am requesting that the police go and

5     bring Mr. Bannock here, because he said, I'll be here waiting

6     for the police, because he's not coming of his own free will.

7     He doesn't think much of your summonses.  Matter of fact, he

8     doesn't think they have any force and effect of law, so.....

9          THE COURT:  All right.  And you personally handed him the

10    subpoena?

11         MR. WINTERROWD:  No, I was there when he was served.  I

12    -- I can't serve subpoenas for myself.

13         THE COURT:  And you have a copy of his.....

14         MR. WINTERROWD:  Right here.  It's all ready, all filled

15    out, and they're ready to rock and roll.

16         THE COURT:  All right.  Would you show that to Mr.

17    Bangerter before you file it with the court?

18         MR. WINTERROWD:  I'm sorry?

19         THE COURT:  Will you show that to Mr. Bangerter before

20    you file it with the court?

21         MR. WINTERROWD:  Sure.

22         MR. BANGERTER:  Your Honor, this is the first time that

23    the state's been made aware of any subpoena for Mr. Bannock,

24    or Bannock, and also to Miss -- or Beverly Cutler, for the

25    same reasons we went through yesterday, the state moves to

**brief encounters**

**(907) 230-6691**

1    quash these warrants as oppressive and unduly burdensome.....

2         MR. WINTERROWD:  Objection.

3         MR. BANGERTER:  .....according to Rule 17.  And if --

4    Your Honor, if you want to take up the video issue, I'm ready

5    to discuss that now.

6         MR. WINTERROWD:  He doesn't even know what -- what it's

7    about.  These people.....

8         THE COURT:  With regard to Dwayne Bannock, he's head of

9    DMV, we're going to be discussing driver's license.  Why is

10   this unduly oppressive and burdensome?

11        MR. BANGERTER:  He's the -- I guess, from what I'm

12   understanding from Mr. Winterrowd, is he's the head of DMV.

13   Those documents, anything that Mr. Winterrowd wants to bring

14   out can be brought out through documents that he can obtain

15   from DMV.  The state's going to introduce the DMV records

16   which are going to show that his license is suspended.  I

17   don't see what his testimony can relate to in this case.  It's

18   -- the elements of this case are straightforward, driving a

19   highway, license suspended, and he knew.  I don't see how Mr.

20   Winterrowd's defense to any of those elements.....

21        THE COURT:  Has Mr. Bannock contacted your office to.....

22        MR. BANGERTER:  No.

23        THE COURT:  .....quash this subpoena?

24        MR. BANGERTER:  No.  Like I said, this is the first time

25   that I've heard of it.

**brief encounters**

(907) 230 -6691

1     THE COURT:  Mr. Winterrowd, when was Mr. Bannock served

2  the subpoena?

3     MR. WINTERROWD:  He was served the last time about two

4  months ago, and then I served him a second time so that he

5  knew for sure it was going to be today.

6     THE COURT:  And two months -- well, two months ago, the

7  service was for today, or is that for a different date?

8     MR. WINTERROWD:  No, it was to call in because we didn't

9  know.

10     THE COURT:  Okay.

11     MR. WINTERROWD:  I've been trying to serve some of these

12  other people, just like that gentleman over there, and you

13  can't track these people down, they just -- they vanish,

14  nobody wants to show up.  I finally had to get Judicial

15  Services, the clerk of the court wouldn't come out.  She hides

16  in her office.  Well, what do I do?  She's out to lunch, she's

17  in a meeting.

18     THE COURT:  And.....

19     MR. WINTERROWD:  I don't have any choice.  He has had

20  plenty of notice.  If he wanted to get it quashed, he would

21  have done it himself.

22     THE COURT:  When was Mr. Bannock served for today,

23  the.....

24     MR. WINTERROWD:  He was served last Friday again.

25     THE COURT:  Was he?



**brief encounters**

(907) 230-6691

1       MR. WINTERROWD:  I just wanted -- because I had a firm

2  date.

3       UNIDENTIFIED VOICE:  I served on Don [sic] Bannock.....

4       MR. WINTERROWD:  It's on the.....

5       UNIDENTIFIED VOICE:  .....on January 27th.

6       MR. WINTERROWD:  .....27th.  I think it's Friday.  I

7  wanted to make sure that he knew that he was to be here.  And

8  he doesn't want it quashed.

9       THE COURT:  I believe that at this time I should issue a

10 bench warrant for Mr. Bannock so that he can be required to

11 attend.  And it's not appropriate for someone to simply

12 disregard a subpoena.  So if he wants it quashed, I guess, he

13 needs to take affirmative steps to have it quashed, or else he

14 needs to be here.  And since he hasn't contacted the D.A.'s

15 office, there has been no motion filed, and I think a bench

16 warrant for Mr. Bannock to be brought to these proceedings is

17 appropriate.

18      MR. WINTERROWD:  He said he'd be sitting there waiting on

19 you.....

20      THE COURT:  And.....

21      MR. WINTERROWD:  .....if you made him come.  He said he

22 just wasn't going to come.

23      THE COURT:  .....where is Mr. Bannock, do you know?

24      MR. WINTERROWD:  He is located on the DMV office on

25 Northern Lights, or whatever it is over there.  I don't know

**brief encounters**

(907) 230-6691

11

1    which one it is there, off of Minnesota, the main DMV office.

2         THE COURT:  Okay.  All right.  And you may want to make a

3    call out to him.

4         MR. BANGERTER:  That's fine.  When we get a second, I'll

5    -- I don't know how to contact him, but I can work it out.

6         MR. WINTERROWD:  If he wanted it quashed, he'd have

7    quashed it.  He's had two months.

8         THE COURT:  I understand.  Okay.  So I've granted your

9    motion for the bench warrant on Mr. Bannock.

10        MR. WINTERROWD:  Okay.  I'd like to see him here because

11   it's really important.

12        THE COURT:  Understood.  And.....

13        MR. WINTERROWD:  Because I have two hours of video of

14   him.  He allowed me to videotape him with this information.

15   And he's got information nobody's got.  He's the man.

16        THE COURT:  All right.  Well, this is a case involving

17   whether or not Mr. Winterrowd's driver's license was revoked,

18   and I assume it was revoked in the State of Alaska?

19        MR. BANGERTER:  Suspended.

20        THE COURT:  Suspended?

21        MR. BANGERTER:  Correct.

22        THE COURT:  In the State of Alaska, so.....

23        MR. BANGERTER:  Correct.

24        THE COURT:  Seems to me that Mr. Bannock or some

25   representative of his office at least should be compellable by

**brief encounters**

**(907) 230-6691**

1  the defense if that's an issue, so.....

2      MR. WINTERROWD:  I also have a issue and objection to

3  Officer, is it Krauss, is that the way you pronounce your

4  name?

5      OFFICER KRAUSS:  Yes, sir.

6      MR. WINTERROWD:  Showing up in uniform.  I had expressed

7  that to him, because it is a show of force and it commands

8  respect, and that's not even -- I -- I demand a fair trial,

9  and I happen to know quite a bit about their use of force

10 continuum, and the first level is officer present in a

11 uniform.  He's carrying a firearm.  Doesn't need any of those

12 things in here.  He should be in here to testify because he is

13 testifying as a private prosecutor of his own personal

14 knowledge.  And that -- it -- that there commands respect, and

15 that gives me a disadvantage when he's talking and I'm

16 talking.

17     THE COURT:  All right.  I'm going to deny that motion.

18     MR. WINTERROWD:  Grounds?

19     THE COURT:  And, again, Mr. Winterrowd, all of your

20 objections are noted for the record.  We're recording

21 everything.

22     MR. WINTERROWD:  Well, I'm going to make a little

23 statement so we get them all summed up in here for the record

24 today.

25     THE COURT:  Understood.



**brief encounters**

**(907) 230-6691**

13

1      MR. WINTERROWD:  So we're -- we go in with a -- we

2  understand what we're doing here.

3      THE COURT:  All right.

4      MR. WINTERROWD:  Because I'm -- I'm -- I'm choosing the

5  lesser of two evils.  There is no assistance of counsel, I

6  can't get it.

7      THE COURT:  All right.

8      MR. WINTERROWD:  Because nobody would sign the contract.

9      THE COURT:  And everything.....

10      MR. WINTERROWD:  So you're forcing me to go ahead.

11      THE COURT:  .....everything you say, of course, is

12  be.....

13      MR. WINTERROWD:  So, here we are.

14      THE COURT:  .....your objections are being noted for the

15  record.  They're appealable.  But, for today at least, the

16  motion's denied, so.....

17      MR. WINTERROWD:  I don't want anything appealable.  I --

18  I have the right to have these things dealt with before.  I

19  mean, everything's appealable.  You could just haul me out of

20  here today and it's appealable.

21      THE COURT:  All right.

22      MR. WINTERROWD:  I have a right to a trial by jury of my

23  peers, which you guaranteed me.  You said I was going to get a

24  trial by jury of my peers.

25      THE COURT:  Any other issues, then?

1       MR. BANGERTER:  Well, as to the videotape issue, and to

2   some extent, Mr. Winterrowd--I think I'm saying that right,

3   Winterrowd?

4       MR. WINTERROWD:  It's Winterrowd, just like outside.

5       MR. BANGERTER:  Winterrowd did come to the office

6   yesterday, and it is true that our office did not, at that

7   point when he first came, have the video.  However, I went to

8   great lengths and had the video brought over directly from

9   Palmer P.D. while he was there, which is pretty unusual

10  because he has not submitted any written request for the video

11  or a written request.....

12      MR. WINTERROWD:  (Indiscernible - simultaneous speech)

13  object.

14      MR. BANGERTER:  .....for it to be duplicated.  Mr.

15  Winterrowd and I watched the video together for approximately,

16  I don't know, five minutes, 10 minutes.  There's no -- it's a

17  pretty poor quality video and there's no sound.  We initially

18  thought that maybe we hadn't plugged in a cord right, but upon

19  further, you know, looking at the stuff, there's just no sound

20  to this video.  He had to -- Mr. Winterrowd had to go I think

21  to -- out to Chickaloon to get some documents ready for trial,

22  so he didn't stay to watch the whole video, but it was there

23  made available for him.  And I brought it here today.  The

24  state's no intending on introducing it into evidence or using

25  it in this trial, but if he'd like to -- if the court wants to

**brief encounters**

(907) 230-6691

15

 1  give him another opportunity to view the video in its

 2  entirety, it's not more than 10 minutes long.....

 3       THE COURT:  Okay.

 4       MR. BANGERTER:  .....I have the stuff available.

 5       THE COURT:  Is that the only tape made, or is there also

 6  an audiotape?

 7       MR. BANGERTER:  No, there's no audiotape.  It's.....

 8       OFFICER KRAUSS:  The audiotape wasn't working, Your

 9  Honor.

10       THE COURT:  Okay.

11       MR. WINTERROWD:  I'm sorry, the audio wasn't working?

12       OFFICER KRAUSS:  No, that's why there's no sound on that

13  tape.

14       THE COURT:  Oh, okay.

15       MR. WINTERROWD:  Well, first of all, we're not quite

16  right here.  I want us to get the record straight here.  I

17  went there, and their machine wasn't hooked up, but he was

18  generous enough, tried to hook it up.  And we had a gal come

19  in and try to hook it up.  And we didn't know if we had it

20  going, and so I said, well, we just agreed on, well, he'll get

21  it all fixed up to see if he could get some -- something out

22  of this thing.  So I left because it wasn't there again.

23       THE COURT:  Okay.

24       MR. WINTERROWD:  And I have a video.  I have it on a Mac,

25  and -- I have my video camera, and I have somebody from news

**brief encounters**

**(907) 230 - 6691**

16

1  gave me a thing to hook it up, so I need some way to hook up,

2  because I don't know how yet.  I've got the software, and I

3  have a video, it's really important.  I have a nice, clean

4  video of Officer Krauss.  And so we're going to need a camera,

5  and I got to figure out a way to get it hooked up.

6      THE COURT:  All right.  Well, I don't hook up cameras,

7  Mr. Winterrowd, so.....

8      MR. WINTERROWD:  Well, I got to have a TV monitor here

9  and equipment.

10     THE COURT:  We have -- we.....

11     MR. WINTERROWD:  You guys should have all that, I think.

12     THE COURT:  We have a monitor and a VCR, so.....

13     MR. WINTERROWD:  Yeah.  Should have the things to do

14  that.  I mean, I could have brought all these things, but.....

15     THE COURT:  Yeah.  Well, the court has a monitor and a

16  VCR.  If you need other things, you'll need to bring them

17  yourself.

18     MR. WINTERROWD:  Well, I think we're.....

19     THE COURT:  All right.

20     MR. WINTERROWD:  .....good to go.  I think we are.

21     THE COURT:  As far as jury selection, Mr. Winterrowd,

22  since you haven't done a trial with me yet, I always.....

23     MR. WINTERROWD:  I'm sorry, since I haven't done a trial

24  with you?

25     THE COURT:  Yes.  I need to explain -- I always explain

**brief encounters**

(907) 230 - 6691

17

1   to attorneys or parties how I do jury selection so that

2   nobody's taken off guard.  So, basically, what we'll do, Mr.

3   Winterrowd is fill the box with 12 people.

4        MR. WINTERROWD:  I'm sorry, could you hold on just a

5   minute?  I'm going to put this on so I can make sure I can

6   hear what the heck you're doing here.

7        THE COURT:  Okay.  Testing, testing.  That working?

8        MR. WINTERROWD:  Yeah.

9        THE COURT:  Okay.  What I'll do, Mr. Winterrowd, is fill

10  the box with 12 people.  We're eventually going to select

11  seven people, but we'll do *voir dire* of those 12 people.  I'll

12  permit each side a set period of time, and we can talk about

13  the time period, to question the jurors.  And I don't know if

14  you've done trials before, but, basically, the questions that

15  are permissible are questions designed to determine whether

16  they're going to be fair jurors.  You're not allowed to

17  provide them law or gain commitments out of them or things

18  like that, but determine whether they're going to be fair and

19  impartial jurors to decide this type of case and deal with the

20  parties to this case.  So.....

21        MR. WINTERROWD:  I have a question.

22        THE COURT:  Okay.

23        MR. WINTERROWD:  You said I was going to get a trial by

24  jury of my peers.  A trial by.....

25        THE COURT:  Let me.....

**brief encounters**

(907) 230 - 6691

18

1      MR. WINTERROWD:  .....jury is 12 people.

2      THE COURT:  .....let me finish, Mr. Winterrowd.

3      MR. WINTERROWD:  Oh, okay.  Go ahead.  Alrighty.

4      THE COURT:  Okay.  And then you can address your

5  questions.

6      MR. WINTERROWD:  Okay.

7      THE COURT:  So, after you've questioned the 12 jurors,

8  then each side will have the opportunity to excuse up to four

9  people for peremptory challenges.  Now, if you have challenges

10  for cause, and those challenges for cause are listed in the

11  Alaska Court rules, you can make those challenges.  There --

12  you have unlimited challenges for cause, but for peremptory

13  challenges, and those are challenges for no re -- you don't

14  need to even give a reason, you have four of those.  I'll ask

15  -- at the end of the initial *voir dire*, that is, the initial

16  jury questioning, I'll ask each attorney or each party to

17  write down the names of up to four people they wish to excuse

18  of the 12 up there.

19      MR. WINTERROWD:  Where's the rules at?

20      THE COURT:  Once you do so.....

21      MR. WINTERROWD:  Oh, go ahead.

22      THE COURT:  .....then I'll ask both parties to bring

23  those challenges up, and we'll excuse those folks.  If you

24  both challenge the same person, you've both exercised a

25  peremptory challenge so you've used up one of your four

**brief encounters**

(907) 230-6691

1  challenges.  If you don't excuse somebody who's seated up

2  here, then during the next round, if there's a subsequent

3  round, you don't get to question them or excuse them, they're

4  already on the jury.  So you'll question the next batch of

5  folks that come up to fill the empty spots.

6      MR. WINTERROWD:  Hold on a minute here.  I didn't turn my

7  cell phone off, sorry.

8      THE COURT:  And, typically, it takes between one and two

9  rounds to complete the jury selection.  I ask parties to use

10  formal names, that is, don't refer to people by their first

11  names who are wit -- jurors.  It's improper to ask fact-based

12  hypotheticals to a jury, especially if the facts are similar

13  to the case being tried.  So you had some additional

14  questions, Mr. Winterrowd?

15      MR. WINTERROWD:  Yes.  You said I was going to get a

16  trial by jury of my peers, that's 12 people.

17      THE COURT:  All right.  In district court, trials are

18  conducted with six people.  And that reminds me to explain how

19  the alternate works.  We -- we're going to select seven

20  jurors.  At the end of the trial, if we still have seven

21  jurors able to deliberate, we will put those seven names into

22  the box, we will rotate the box, and Madam Clerk will select

23  at random one of the seven to excuse.  So it'll end up being

24  six jurors who end up deliberating on this case.

25      MR. WINTERROWD:  Well, like I said, a trial by jury is 12



**brief encounters**

(907) 230 -6691

1  people.

2       THE COURT:  All right.  You've already raised that issue,

3  Mr. Winterrowd.  It's preserved.....

4       MR. WINTERROWD:  So you're going to deny it?  I just need

5  you to deny it, then.

6       THE COURT:  Correct.

7       MR. WINTERROWD:  Okay.  I take exception.

8       THE COURT:  Okay.  Yes, and, Mr. Winterrowd, in Alaska,

9  you don't need to take exception.  Once you've made the

10  objection, it's overruled, that objection is preserved, so

11  exceptions are an outdated thing.  It's not necessary in

12  Alaska to make exceptions, so.....

13       MR. WINTERROWD:  I'm pretty outdated.  I like the

14  Constitution yet.

15       THE COURT:  Okay.  There's nothing in the Constitution

16  about exceptions.  So next issue.....

17       MR. WINTERROWD:  There is about law.

18       THE COURT:  Do you have any other questions about this,

19  Mr. Winterrowd, or issues to raise?

20       MR. WINTERROWD:  Where is this jury qualifications at?

21  What rule is it?  It's one thing I haven't looked up yet.

22       THE COURT:  Okay.  Rule 24, Mr. Winterrowd, is the rule

23  on trial jurors.  It also contains, under subsection (c).....

24       MR. WINTERROWD:  Twenty-four of which, criminal rules?

25       THE COURT:  Criminal rules, correct.  Under 24(c), it

1   lists the exceptions for cause that you can make.

2       MR. BANGERTER:  Are we done with that?  I do have one

3   other.....

4       THE COURT:  All right.  Typically, as far as the time

5   limit for questioning the initial 12, typically, I suggest 25

6   minutes per party for questioning the initial 12.  So let me

7   first begin with Mr. Bangerter.  Is that amount of time

8   sufficient in your view to conduct your *voir dire*?

9       MR. BANGERTER:  Absolutely.

10      THE COURT:  Mr. Winterrowd, do you need any additional

11  time beyond the general 25 minutes that I permit for

12  questioning the 12?

13      MR. WINTERROWD:  I'm not sure yet, because I'm not -- I

14  have never done this before.

15      THE COURT:  All right.

16      MR. WINTERROWD:  I do.....

17      THE COURT:  At this point, I'm going to say, then,

18  that.....

19      MR. WINTERROWD:  I need to -- want to make a statement

20  before we get started, so.....

21      THE COURT:  All right.

22      MR. WINTERROWD:  .....I want to get that on the record.

23      THE COURT:  At this point, I'm going to impose a 25-

24  minute time limit for the questioning of jurors.  And,

25  typically, Mr. Winterrowd, I don't tell.....

**brief encounters**

(907) 230-6691

22

1          MR. WINTERROWD:  Winterrowd.

2          THE COURT:  Winterrowd.  I don't tell parties how to do

3     their cases, but if you have questions that can be addressed

4     to the panel, that is, would you raise your hands if you

5     answer this question in the affirmative or whatever, that

6     saves some time.  If there are special issues that arise that

7     necessitate additional time, in your view, beyond the 25

8     minutes, if you have used your time wisely and there are

9     issues that come up, you can ask for additional time beyond

10    the 25 minutes, so.....  Yes, Mr. Winterrowd?

11         MR. WINTERROWD:  I just want to make a brief statement.

12         THE COURT:  Okay.

13         MR. WINTERROWD:  Yeah.  Let the record so show that the

14    Constitution, the law of the United States, is not the rule of

15    the -- of law in this court.  And I was guaranteed a trial by

16    jury of 12 of my peers, and that's going -- that's also going

17    to be denied.  I have done a citizen's arrest on Judge Wolfe

18    and -- for belonging to a terrorist organization, and also he

19    -- for the fact that he is not an independent judge.  He has

20    cooperative agreements through the Alaska Court System with

21    the, quote, executive side.  And so, therefore, he can't be.

22    And, then, also under the judicial code, which you're bound

23    by, you are a judge of the fact and the law, and the jury's

24    supposed to be the judge of the facts, and you're bound by the

25    judicial code.  And also this attorney -- and would you

**brief encounters**

**(907) 230-6691**

23

1    pronounce your name again, sir?

2         MR. BANGERTER:  Bangerter.

3         MR. WINTERROWD:  Bangerter is -- he's a bar member also.

4    So you guys, between the executive, you both belong to the

5    same organization and you're both bound by the Code of

6    Professional Conduct.  And I have tried to get attorneys to

7    sign that contract, which, according to the Professional Code

8    of Conduct, they're supposed to sign, but -- and they have an

9    affidavit rule 64, and nobody will touch it.  So I am

10   proceeding forward.  I have the lesser of two evils.  I either

11   proceed forward, which I am not learned in the law, or because

12   I can't find a counselor at law.  So I have no choice.  So I'm

13   proceeding forward with what I consider a judicial lynching.

14        THE COURT:  Okay.  Now, Mr. Winterrowd, typically,

15   speaking objections in front of a jury are not appropriate.  I

16   ask both parties not to do so.  If it's anything more than

17   objection, hearsay, or objection, argumentative, or objection,

18   basically the objection you're making, I ask that parties

19   approach the bench, because that's proper trial procedure.  If

20   you want at any time, when the jury's not present, to make a

21   record of additional grounds for the objections you've made or

22   whatever, I'll permit you to do so at any break.  So we're

23   going to take a break every hour or two, send the jury out so

24   that we can take a break, but also so that you can raise

25   whatever other issues you want to at that time.

1    MR. WINTERROWD:  I'm going to have Debbie sit up here and

2  take care of all these documents for me.

3    THE COURT:  All right.  And that reminds me, as far as is

4  there going to be a request for exclusion of witnesses.....

5    MR. WINTERROWD:  Yes.

6    THE COURT:  .....in this case?

7    MR. WINTERROWD:  Yes, there is going to be a request for

8  exclusion, the exclusionary rule.

9    THE COURT:  Okay.  I.....

10    MR. WINTERROWD:  Of course, I've got a couple witnesses,

11  but I don't know if I'm going to be able to get them in.

12    THE COURT:  I will ask both parties to keep an eye on the

13  spectators in the courtroom and make sure your -- because I

14  don't know who you're planning to call, make sure your

15  witnesses are outside of the courtroom.  Is there anybody

16  requesting an exception to the exclusionary rule?

17    MR. BANGERTER:  Well, Your Honor, the state would like to

18  designate Officer Krauss sitting here as the investigator for

19  the state and able to be present during the state's

20  presentation of this case.

21    THE COURT:  All right.

22    MR. WINTERROWD:  My only thing is Officer Krauss is -- I

23  don't know if they're going to -- I don't know how many

24  witnesses they're going to bring.  I mean, I've tried to -- if

25  he's going to testify and he has to stay in here, he's got to

1   be the first person on the stand so that he doesn't get to

2   hear other testimony, so he -- so he doesn't get to alter his

3   testimony.  I don't know if he's going to have more than

4   witness or not.  I don't know.  I have no idea, haven't been

5   told.  It's all a surprise to me today.

6       THE COURT:  And exclusion of witnesses, Mr. Winterrowd,

7   is governed by Evidence Rule 615, and that should be in the

8   book there.  Evidence Rule 615 permits the State of Alaska to

9   designate an officer or employee of a party, who is not a

10  natural party, to remain in the courtroom.  So over your

11  objection, I'm going to permit Officer Krauss to remain in the

12  courtroom.  Do you.....

13      MR. WINTERROWD:  He's -- he's not a natural person?

14      THE COURT:  The party in this case is the State of

15  Alaska, which is not considered a natural person, so.....

16      MR. WINTERROWD:  So is he representing the State of

17  Alaska, then?

18      THE COURT:  That's -- he's going to be its representative

19  and is designated by the state as such.  So do you have

20  anybody you want to exclude from the -- except from the

21  exclusion of witness rule, Mr. Winterrowd?

22      MR. WINTERROWD:  No, I don't, but I object because if

23  he -- or there's -- there's.....

24      THE COURT:  Your objection's been noted and I didn't.....

25      MR. WINTERROWD:  .....there I -- well, there's just --

**brief encounters** 

(907) 230-6691

26

1    let me think, just give me a second here.  There are legal

2    persons and there are natural person [sic], and you can't be

3    one or the other.  So he is representing a legal fiction, the

4    State of Alaska, then, and he's not an attorney?

5          THE COURT:  Okay.  Are we.....

6          MR. WINTERROWD:  He's a representative, is that correct?

7          THE COURT:  Are ready, then, for the jury.....

8          MR. WINTERROWD:  I just need to understand, is that -- is

9    that what you're saying?

10         THE COURT:  I'm sa -- all you need to understand, Mr.

11   Winterrowd, is that I've overruled your objection based on

12   Evidence Rule 615.

13         MR. WINTERROWD:  Still object.

14         THE COURT:  And.....

15         MR. BANGERTER:  Your Honor, the state does have another

16   issue before we start.  And I apologize, this is taking so

17   long.  But the state -- what the state's concerned about is

18   that trial, it's a DWLS trial, I'm concerned that this trial

19   is basically going to come -- we're going to try to litigate

20   whether a Chickaloon driver's license is a valid Alaska

21   driver's license.  That's not at issue in this case, and, in

22   fact, it's been decided by the court of appeals, and I don't

23   wish to attempt to re-litigate that issue as it's not related

24   to the elements of this charge.  And so I would like to have a

25   limited instruction that we not have discussion as to whether

1    or not a Chickaloon driver's license is a valid driver's

2    license.

3        MR. WINTERROWD:  Objection, because I have a tape, a

4    video of this, and I also have it in his documentation that

5    he's -- Mr. Krauss said it is not a driver license.  It is an

6    issue here, and it hasn't been litigated.  Nobody's given me

7    any findings of fact, conclusions of law.

8        THE COURT:  All right.

9        MR. WINTERROWD:  And it's in his own testimony.

10       THE COURT:  In whose testimony?

11       MR. WINTERROWD:  The man right there, Officer Krauss.

12   Said, no, it's not a valid Alaska driver -- he made that as

13   part of the evidence.  He made a decision, so he's got to

14   stand by it.  I -- I have a right -- it's in the discovery

15   package, it's in the video.

16       THE COURT:  It's my ruling that whether or not Chickaloon

17   driver's licenses are valid is irrelevant to issues that we're

18   going to be trying today.  Now.....

19       MR. WINTERROWD:  That's not so.

20       THE COURT:  .....the -- if you had a Chickaloon driver's

21   license, that may be relevant to whether or not you recklessly

22   disregarded the fact that your license was suspen -- I'm not

23   going to prohibit you from offering that type of evidence if

24   you want.  But if it becomes an issue, I'm going to tell the

25   jury that the validity of this license is not at issue in this

1  case, so.....

2      MR. WINTERROWD:  We're not trying the validity of it.

3  Trying if [sic] it's a valid driver's license in Alaska.

4      THE COURT:  All right.

5      MR. WINTERROWD:  That's -- he said it's not.  You can't

6  exclude his testimony.  It's in the documents and I -- it's on

7  the video.

8      THE COURT:  And I've made my ruling, so.....

9      MR. WINTERROWD:  He.....

10      THE COURT:  .....Mr. Winterrowd, any other issues before

11  we bring the jury in?

12      MR. BANGERTER:  Well, also, I guess I want to limit my

13  objections.  I don't want to be jumping up and down all during

14  the court, and I also want to just limit my -- state that the

15  state will object to any discussion regarding some of the

16  topics that have been discussed before with Mr. Winterrowd,

17  specifically, assistance of counsel, counselor at law, the

18  distinction between those titles, and whether the State of

19  Alaska is a entity that really exists.

20      THE COURT:  Well, I -- yeah, I don't think it's necessary

21  to go into those now.  And, Mr. Winterrowd, as I explained,

22  the sole issues the jury is going to be trying today is

23  whether or not the state is able to prove the elements of this

24  offense beyond reasonable doubt.  And I read those elements to

25  you.  I'd be glad to do it again, but.....

**brief encounters**

(907) 230-6691

1      MR. WINTERROWD:  Yeah, I'd like to get them straightened

2  out because.....

3      THE COURT:  All right.

4      MR. WINTERROWD:  .....I'm still not sure what the.....

5      THE COURT:  Fax.....

6      MR. WINTERROWD:  .....what we're doing here.  I don't

7  know, and.....

8      THE COURT:  All right.  The first element the state is

9  going to have to prove, and the state, by the way, I'll ask

10 the state to provide a complete packet of their proposed jury

11 instructions by tomorrow morning.

12     MR. BANGERTER:  How should I give them to Mr. Winterrowd?

13     THE COURT:  If you could provide them to Mr. Winterrowd

14 first thing tomorrow morning when we go on record, and also

15 provide them to the court first thing tomorrow morning.  And

16 I'm also going to ask that your secretary fax, or e-mail a

17 copy to me so that if we can -- if we need to adjust them, I

18 can do so while we're working here.  And, Mr. Winterrowd, you

19 can provide your own set of proposed jury instructions, but

20 you don't need to do that until after you have presented a

21 case.  If you've de -- if you decide to present a case, you

22 can wait until you've called your last witness and provide

23 them at that time.

24     As far as the elements of this offense, the first element

25 is that this event occurred on or about August the 10th, '05

1   and at or near Palmer.  So that's the first thing the state

2   has to prove beyond reasonable doubt.  The second thing the

3   state has to prove beyond reasonable doubt is that you

4   knowingly drove a motor vehicle on a highway or vehicular way.

5   The third thing they need to prove is that, at the time you

6   did so, your driver's license, privilege to drive or privilege

7   to obtain a license in this or another jurisdiction was

8   suspended.  And the fourth thing they have to prove is that

9   you recklessly disregarded the fact that your license was

10  suspended.  The burden is -- and I'll tell the jury this as

11  well, but the burden is entirely on the State of Alaska to

12  prove this beyond reasonable doubt.  You don't have to prove

13  anything.  In fact, you have the absolute right to remain

14  silent.  If the state has failed to prove even one of these

15  elements beyond reasonable doubt to even one juror, then you

16  cannot be convicted.

17       You can choose to testify if you want to at a certain

18  point in this trial, and I'll talk to you about that at two

19  different points in the trial.  The rule says that I have to

20  address you prior to the time opening statements are made.

21  That's Criminal Rule 27.1, and explain to you that you do have

22  the right to testify, but you also have the right to remain

23  silent.  So you don't have to say anything.  And, then, again,

24  if you have not called yourself as a witness before you rest

25  your case, then I'll address you one more time before this

**brief encounters**

(907) 230-6691

1  case is over with, so, but.....

2      MR. WINTERROWD:  Is this packet that they gave me under

3  discovery, inculpatory or exculpatory, I presume that it's

4  open to -- it's -- it's evidence, right?  This is the whole

5  packet they gave me.

6      THE COURT:  Typically, a police report is not evidence.

7      MR. WINTERROWD:  Well, I have the right to check the

8  validity of what's going on in this packet, right?

9      THE COURT:  Absolutely.

10     MR. WINTERROWD:  Great.  Okay.

11     THE COURT:  All right.

12     MR. WINTERROWD:  Because, you know, this is all -- this

13  is not near what I'm supposed to have gotten, but it's a

14  start.

15     THE COURT:  All right.  Any other issues before we call

16  the jury panel in?

17     MR. BANGERTER:  No, Your Honor.

18     THE COURT:  All right, Madam Clerk, would you see if we

19  have.....

20     MR. WINTERROWD:  I can't hear you, for one thing, Your

21  Honor.

22     THE COURT:  Okay.

23  [9:21:40]

24     (Other matters)

25  [9:22:30]

**brief encounters**

(907) 230 - 6691

## TRANSCRIBER'S CERTIFICATE

1    I, KRISTEN K. REYNOLDS, do hereby certify that:

2    I am a Alaska State Court Systems certified transcriber,

3    and have been such since 1981; that the foregoing transcript

4    of proceedings was transcribed by me; that the transcript

5    consists of three volumes totaling 465 pages, plus the table

6    of contents; and that said transcript constitutes a full, true

7    and correct record of said proceedings taken on the dates

8    indicated therein.

9    Further, that I am a disinterested person to said action.

10    IN WITNESS WHEREOF, I have hereunto set my hand this 30th

11    day of April, 2006.

_____

Kristen K. Reynolds
Alaska State Court System Certified
Transcriber

brief encounters    (907) 230-6691